Hyung S. Choi, State Bar 015669
CHOI & FABIAN, PLC
401 W. Baseline Rd, Suite 210
Tempe, Arizona 85283
Tel: (480) 517-1400
Fax: (480) 517-6955
Attorneys for Plaintiff Queiruga

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Manuel Queiruga and Helen Queiruga, husband and wife,<br><br>Plaintiff,<br><br>vs.<br><br>Capital Lending & Investments, Inc.; First American Title Insurance Company; JKM Investment, Inc.<br><br>Defendants. | No. _____<br><br>**COMPLAINT**<br><br>**and**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, upon information and belief, allege:

**PRELIMINARY STATEMENT**

1. In September of 2006, Plaintiffs Manuel Queiruga and Helen Queiruga ("the Queirugas") encountered financial difficulties and faced foreclosure of their home. Defendant Capital Lending & Investments, Inc., ("CLI") a mortgage lender, provided a loan in the amount of $10,529.00 to stop the foreclosure. The loan was secured by a second mortgage for the Queirugas' home. Only 10 months later,

Defendants demanded $31,887.69 from the Queirugas as a payoff for the second mortgage or face yet another foreclosure sale. The Queirugas bring this action for Defendants' violations of the following statutes and regulations:

a. Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, promulgated pursuant thereto; and

b. Home Ownership and Equity Protection Act of 1994 ("HOEPA") and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, promulgated pursuant thereto; and

The Queirugas seek actual and statutory damages, and declaratory relief stopping foreclosure sale of their home by Defendants.

## **JURISDICTION**

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1640(e).

## **PARTIES**

3. The Queirugas are natural persons residing in Show Low, Navajo County, Arizona.

4. CLI is an Arizona corporation.

5. CLI is engaged in the business of providing loans secured by borrowers' homes.

6. Defendant JKM Investment, Inc. ("JKM") is an Arizona corporation.

7. JKM is engaged in the business of purchasing the creditor's interest in mortgages.

8. Defendant First American Title Insurance Company ("First American Title") is a California corporation authorized to conduct business in the State of Arizona.

2

## FACTUAL ALLEGATIONS

9. The Queirugas have been married for 40 years.

10. Helen is a school teacher.

11. Manuel is a sou chef.

12. They have lived at their family home at 1860 North 36th Drive, Show Low, Arizona, for over 20 years.

13. They have raised 4 children at the home, including Brent, an adopted son.

14. Brent was Helen's student. He has Aspergers disorder and was abandoned by his natural parents.

15. Around 2004, Queiruga's son Michael, then a detective with the Navajo County Sheriff's Office, sustained serious injuries while on the job.

16. Prior to that, Helen had co-signed a Capital-One Auto Finance Company's loan for Michael's truck.

17. After the injury, Michael experienced financial difficulties.

18. Beginning in 2006, the Queiruguas began helping Michael make payments on the truck.

19. Around 2005, Brent was charged with criminal acts which eventually led to his incarceration in the Arizona State Hospital.

20. These events caused serious financial hardship for the Queirugas.

21. The Queirugas fell behind in their mortgage payment to Wells Fargo.

22. Wells Fargo initiated foreclosure proceedings on the Queirugas' home.

23. The Queirugas received a card in the mail from CLI offering a loan to help with the foreclosure.

24. Manuel contacted CLI and asked for a loan to stop the foreclosure.

25. On September 5, 2006, the Queirugas signed the loan documents without fully understanding the terms of the loan.

26. The loan documents – all of which were prepared by CLI – included a Truth-In-Lending Disclosure Statement with the following terms:

| Amount Financed | $10,529.00 |
| Loan Origination Fee | $2,500.00 |
| Doc Prep Fee | $476.00 |
| Misc. Fees | $545.00 |
| Annual Percentage Rate | 40.677% |
| Finance Charge | $13,009.98 |
| Total of Payments | $23,538.98 |
| Monthly Payments | |
| First 12 months | $291.67 |
| Next 35 months | $556.64 |
| Final month | $556.54 |

(Truth-In-Lending Disclosure Statement, attached as Exhibit A).

27. The loan documents also included a Promissory Note which contained the following prepayment penalty clause:

> This Note has a hard prepayment penalty at all times
> during the thirty-six (36) month period that commences
> upon and immediately follows the date of this Note (the

4

|   |     | "Prepayment Penalty Period").  If Maker prepays all or any portion of this Note at any time before the end of the Prepayment Penalty Period, Maker shall be required to pay a prepayment penalty.  The amount of the prepayment penalty that Maker must pay will be equal to the entire amount fo the interest that would have accrued on the prepaid amount through the end of the Prepayment Penalty Period, had the prepayment not occurred.  For example, if a full repayment is made on the date that is eleven (11) months after the date of this note, a prepayment charge of twenty-five (25) months of interest will be charged to the Maker, . . . |

(Promissory Note attached as Exhibit B).

28. The Promissory Note also contained the following punitive late payment penalty clause:

> There will be a late fee of $25.00 per day to begin the sixth day after the due date to compensate Lender for administrative expenses and other costs of delinquent payments.

(*Id.*).

29. The loan documents included a Deed of Trust (Exhibit C), Truth-In-Lending Disclosure (For Section 32 Mortgages) (Exhibit D), and Uniform Residential Mortgage Application (Exhibit E), among others.

30. The Queirugas, under extreme financial stress, signed the documents without fully understanding what they were getting into.

31. On September 13, 2006, CLI funded the loan and sent $9,726.07 to Wells Fargo to stop the foreclosure.

32. CLI then assigned its interest in the loan to JKM.

33. Unfortunately, the Queirogas were unable to make payments after making approximately 2 monthly payments.

34. On April 17, 2007, JKM, through First American Title, initiated a foreclosure proceeding against the Queirugas' homes. (Notice of Trustee's Sale attached as Exhibit F).

35. The Queirugas sought assistance from Helen's brother, Roy Medina.

36. Roy Medina offered to pay off the second mortgage and asked Helen to obtain a payoff figure.

37. On May 14, 2007, First American Title provided a Payoff Statement containing the following figures:

| Principal | $14,000.00 |
| Late Charges | $5,325.00 |
| Prepayment Penalty | $9,333.44 |
| Interest on Late Fees | $1,331.25 |
| Trustee's Expenses | $1,898.00 |
| Total | $31,887.69 |

(Payoff Statement, attached as Exhibit G).

38. First American Title also provided a Reinstatement Statement containing the following figures:

| Payments 5 x $291.67 | $1,458.36 |
| Late Fees | $5,325.00 |

| Interest on Late Fees | $1,331.25 |
|---|---|
| Trustee's Expenses | $1,753.00 |
| Total | $9,867.60 |

(Payoff Statement, attached as Exhibit H).

39. When the Queirugas protested about the outrageous amounts, Defendants urged them to sell their home to Defendants and rent it back.

40. The Queirugas bring this lawsuit seeking remedies available to them under TILA and HOEPA.

## CAUSE OF ACTION # 1 - VIOLATION OF HOEPA DISCLOSURE REQUIREMENTS

41. The subject transaction is covered by the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 and Sections 31 and 32 of Federal Reserve Board's Regulation Z (12 C.F.R. §§ 226.31, 226.32).

42. The Queirugas are "consumers" as defined by TILA, 15 U.S.C. § 1602(h) and Regulation Z, 12 C.F.R. § 226.2(a)(11);

43. Capital Lending & Investments, Inc., is a "creditor" as defined in the TILA, 15 U.S.C. § 1602(f) and Regulation Z, 12 C.F.R. § 226.2(a)(17)(I).

44. JKM is an "assignee" of CLI's interest in the mortgage pursuant to 15 U.S.C. § 1641(d).

45. The subject loan was a "consumer credit" transaction secured by the consumers' principal dwelling. Regulation Z, 12 C.F.R. §§ 226.32(a).

46. The subject loan transaction had an interest rate of 40.677% APR.

47. Thus, the subject loan transaction was a loan with an interest rate exceeding 10 percentage points of the yield on treasury securities having comparable periods of maturity. 15 U.S.C. § 1602(aa)(1)(A) and Regulation Z, 12 C.F.R. § 226.32(a)(i).

48. The subject loan transaction was a loan with total points and fees well in excess of 8% of the total loan amount. 15 U.S.C. § 1602(aa)(1)(B) and Regulation Z, 12 C.F.R. § 226.32(a)(1)(ii).

49. Therefore, the subject loan transaction was subject to additional disclosure requirements and certain prohibitions of HOEPA.

50. HOEPA requires additional disclosures as set forth in 15 U.S.C. § 1639(a)(1) and Regulation Z, 12 C.F.R. § 226.32(c)(3).

51. These disclosures must be made three (3) business days prior to the consummation. 15 U.S.C. § 1639(b)(1).

52. CLI failed to make a proper disclosure because it failed to list the complete amount of regular monthly payments as required by 15 U.S.C. § 1639(a)(2)(A).

53. CLI's Truth-In-Lending Disclosure (For Section 32 Mortgages) (Exhibit D) only listed the regular monthly payments of $291.67 for the first 12 months,

| | |
|---|---|
| 1 | not the subsequent 35 monthly payments of $556.64, and the final payment of |
| 2 | $556.54. |
| 3 | 54. The Federal Reserve Board Official Staff Commentary on Regulation Z ("Staff |
| 4 | |
| 5 | Commentary"), § 226.32(c)(3)(1)(i), states: |

> If the loan has more than one payment level, the regular payment for each level must be disclosed. For example: A. In a 30-year graduated payment mortgage where there will be payment of $300 for the first 120 months, $400 for the next 120 months, and $500 for the last 120 months, each payment amount must be disclosed, along with the length of time that the payment will be in effect.

55. CLI's Truth-In-Lending Disclosure (For Section 32 Mortgages) (Exhibit D) failed to meet the disclosure requirement as set forth by the Staff Commentary to § 226.32(c)(3)(1)(I).

56. The above failure to meet the disclosures constitutes a failure to make "material disclosure." 15 U.S.C. § 1602(u); Regulation Z § 226.23, n. 48.

57. Therefore, the Queirugas have an extended right to rescind the transaction. 15 U.S.C. § 1635; Regulation Z § 226.23(a)(3), n. 48.

58. The Queirugas have properly exercised their right to rescind the transaction. (Signed Notice of Right to Cancel, attached as Exhibit I).

59. Failure to properly make the necessary disclosures also gives rise to civil liability under 15 U.S.C. § 1640(a) ($2,000.00 statutory damages), enhanced

9

1. damages pursuant to 15 U.S.C. § 1640(a)(4), and attorney's fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

60. JKM, as assignee of the CLI loan, is subject to liabilities arising out of CLI's violation of the disclosure requirements of HOEPA. 15 U.S.C. § 1641(a).

61. JKM and First American Title, as trustee of JKM's interest, are subject to the Queirugas' right to rescind transaction. 15 U.S.C. § 1641(c).

### CAUSE OF ACTION # 2 - VIOLATION OF HOEPA'S PROHIBITION OF CERTAIN CONTRACTURAL TERMS

62. HOEPA prohibits prepayment penalties unless the loan falls within a five-part exception. 15 U.S.C. § 1639(c); Regulation Z § 226.32(d)(6).

63. One of the exceptions is that the loan must not cause the consumer to pay more than fifty percent of their monthly gross income toward "monthly indebtedness payments." 15 U.S.C. § 1639(c)(2)(A)(i); Regulation Z § 226.32(d)(7)(iii).

64. CLI generated the Uniform Residential Mortgage Application (Exhibit E) for the Queirugas' signatures.

65. The Uniform Residential Mortgage Application showed the Queirugas' monthly gross income of $4,468.00. (Exhibit E, page 2 of 5).

66. The Uniform Residential Mortgage Application showed the Queirugas' total monthly indebtedness payments of $2,128.00. (Exhibit E, page 3 of 5).

67. Based on the Uniform Residential Mortgage Application, the ratio between the Queirugas' monthly indebtedness payments to their monthly gross income was 47.63% ($2,128.00/$4,468.00).

68. However, in the Uniform Residential Mortgage Application, CLI omitted the monthly payment obligations for the subject loan ($291.67) from the "Total Monthly Payment" of $2,128.00. (Exhibit E, page 3 of 5).

69. With the $291.67 added in, the Queirugas' total monthly payments becomes $2,419.67, or 54.16% ($2,419.67/$4,468.00) of their monthly gross income.

70. The Uniform Residential Mortgage Application's "Total Monthly Payment" of $2,128.00 also assumed that the Queirugas would pay off their obligations to Capital One Auto Finance ($593 per month with the loan balance of $28,892.00) and Chrysler Financial ($476 per month with the loan balance of $19,084.00) with the proceeds of the loan from CLI. (Exhibit E, page 3 of 5) ("Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.")

71. Such payoffs were an impossibility since the proceeds of the loan were used to stop the foreclosure. (Disbursement Instructions, attached as Exhibit J).

72. CLI appears to have purposefully miscalculated the total monthly payments in order to impose the prepayment penalty clause.

11

73. With the monthly payments of $291.67 for the subject loan, $593.00 to Capital One Auto Finance, and $476.00 to Chrysler Financial added in, the Queirugas' "Total Monthly Payment" becomes $3,488.67, or 78.08% ($3,488.67/$4,468.00) of their monthly gross income.

74. There are no other applicable exceptions as provided in 15 U.S.C. § 1639(c); Regulation Z § 226.32(d)(6) which would have allowed CLI to impose the prepayment penalties.

75. Inclusion of a prohibited term (the prepayment penalty clause) gives the Queirugas an extended right to rescind the transaction pursuant to 15 U.S.C. § 1635. 15 U.S.C. § 1639(j); Regulation Z § 226.23, n. 48 (defining those limitations incorporated in § 226.32(d) as "material for rescission purposes").

76. The Queirugas have properly exercised their right to rescind the transaction. (Exhibit I).

77. Inclusion of a prohibited term also gives rise to civil liability under 15 U.S.C. § 1640(a) ($2,000.00 statutory damages), enhanced damages pursuant to 15 U.S.C. § 1640(a)(4) and attorney's fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

78. JKM, as assignee of the CLI loan, is subject to liabilities arising out of CLI inclusion of the prohibited term in violation of HOEPA. 15 U.S.C. § 1641(a).

79. JKM and First Amenrtica Title, as trustee of JKM's interest, are subject to the Queirugas' right rescind transaction. 15 U.S.C. § 1641(c).

## CAUSE OF ACTION # 3 - DECLARATORY RELIEF STOPPING THE FORECLOSURE SALE

80. JKM, through First American Title, initially scheduled the foreclosure sale of the Queirugas' home on July 17, 2007.

81. Thereafter, JKM agreed to postpone the foreclosure sale until August 7, 2007.

82. The Queirugas have validly rescinded the loan transaction.

83. Such a valid rescission automatically voids the security interest and eliminates the obligation to pay finance or other charges.

84. Therefore, CLI, JKM, and First American Title have no interest in the subject property upon which to foreclose.

85. The Queirugas seek this Court's order barring CLI, JKM, and First American Title from going forward with the foreclosure.

**JURY DEMAND**

86. The Queirugas demand a jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court award them against Defendants, jointly and severally:

A. Statutory damages in the amount of $2,000 per violation pursuant to 15 U.S.C. § 1640(a);

B. Enhanced statutory damages pursuant to 15 U.S.C. § 1640(a)(4);

C. Attorney's fees and costs pursuant to 15 U.S.C. § 1640(a)(3); and

D. A declaration barring Defendants from foreclosing the Queirugas' home;

E. A declaration canceling the subject loan contract;

E. Prejudgment and post-judgment interest; and

F. Such other relief as it deems just.

RESPECTFULLY SUBMITTED July 16, 2007.

                              CHOI & FABIAN, PLC

                              /s/ Hyung S. Choi
                              Attorneys for Plaintiffs